[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15014
Non-Argument Calendar
_____

D.C. Docket Nos. 1:17-cv-02386-CAP; 14-bkc-60345-WLH

In re: GUY MARCEL SIEWE,

                                                                                                                                           Debtor.
_____

GUY MARCEL SIEWE,

                                                                                          Plaintiff - Appellant,

versus

MARIA GRAZIA LOCCI,

                                                                                       Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 8, 2018)

Before ROSENBAUM, JULIE CARNES, and HULL, Circuit Judges.

PER CURIAM:

This appeal arises from an adversary bankruptcy proceeding in which the bankruptcy court denied Appellant Guy Marcel Siewe a discharge on the ground that he knowingly and fraudulently made a false oath in connection with the case. *See* 11 U.S.C. § 727. Specifically, the bankruptcy court found that Siewe falsely denied signing a document (the "Acknowledgement of Debt" or "IOU") acknowledging a debt of €503,170 (503,170 euros) to Appellee Maria Grazia Locci, who initiated the adversary proceeding.

On appeal, Siewe argues that the bankruptcy court abused its discretion in refusing either to abstain from exercising jurisdiction or to grant relief from the automatic stay so he could challenge a 2013 default judgment, which Locci had obtained against him in Georgia state court based on the IOU. Siewe maintains that the default judgment was invalid because he was never served with the complaint, and that the bankruptcy court abused its discretion and violated his due-process rights by preventing him from challenging the default judgment. Siewe also attacks the bankruptcy's court factual findings as clearly erroneous.

We conclude that we lack jurisdiction to review the bankruptcy court's decision not to abstain and that the bankruptcy court did not abuse its discretion in denying relief from the automatic stay. Further, we find that the factual findings

2

supporting the bankruptcy court's denial of discharge are not clearly erroneous. Accordingly, we dismiss in part and affirm in part.

I.

We begin with the undisputed facts.  Siewe and Locci are connected through Siewe's ex-wife, Josephine Chantal Pouassi.  Pouassi met Locci in 1997.  Pouassi was studying to become a medical doctor in Turin, Italy, where Locci was a practicing pharmacist.  Locci rented an apartment to Pouassi and helped take care of Pouassi's daughter.  Locci and Pouassi became close friends and treated each other as mother and daughter.

Siewe met Pouassi in 1998 in France, where she was completing a medical-residency program.  Siewe was a student at the time.  They dated for the next few years, traveling between France and Italy, had a son together in 2001, and married in 2002.  They lived in France together once Pouassi graduated medical school.

While Pouassi finished her medical studies, Siewe started a renovation company with help from his uncle, Maurice Ngatcha.  Siewe would buy residences in and around Paris, renovate them, and then sell or lease them.  Siewe created and operated several companies in France before he moved to the United States in 2011.  These companies included Sogrim, SIPO, and Feel at Home.  Siewe and Pouassi co-owned SIPO, which owned at least one house and two apartments. Siewe operated the other businesses with his brother.

3

In 2007, Siewe and Pouassi decided to immigrate to the United States. They applied for permanent resident status through the EB-5 immigration program. That program, intended for entrepreneurs and their families, requires a minimum investment of $500,000 in certain qualifying enterprises in the United States. Siewe and Pouassi invested $500,000 in a company called Jay Peak Hotel Suites Phase II LP ("Jay Peak"), which owned a ski resort in Vermont. Siewe sold multiple pieces of real property in France to gather the necessary funds.

Pouassi and her two children moved to the United States first, eventually settling in the Atlanta area. Pouassi intended to become a licensed medical doctor in the United States. Siewe obtained his green card in 2009 but did not move to the United States permanently until 2011. In 2015, Siewe and Pouassi divorced.

## II.

Beyond these facts, matters are a bit more complicated, but the essence of the dispute is straightforward. Locci claims that she loaned Siewe and Pouassi substantial sums of money over the years, primarily to purchase properties—some of which were sold to obtain the funds for the EB-5 program—and equipment for Siewe's businesses in France, and that this money was never repaid. Siewe denies that any such loans occurred and asserts that he owes, at most, around $10,000.

Locci took this dispute to the courts in May 2013, filing a complaint in Georgia state court to recover €503,170 she claimed Siewe and Pouassi owed her.

4

Locci based her claim on an "Acknowledgement of Debt" purportedly executed by Siewe, Pouassi, and Locci in France in September 2009. In this IOU, Siewe and Pouassi acknowledged owing the sum of €503,170 to Locci. The IOU further stated that Siewe entrusted the management and control of the EB-5 investment principal to Pouassi and that Siewe and Pouassi would repay Locci from the proceeds of that investment and other sources, including the sale of real estate owned by Siewe's companies in France. The state court entered a default judgment against Siewe in October 2013.

Shortly after Locci began garnishing Siewe's wages to collect on the default judgment, Siewe filed for bankruptcy under Chapter 7. Locci then filed a claim in the amount of $711,433.85 and an adversary complaint against Siewe, contending that his debt to her was nondischargeable, under 11 U.S.C. § 523, and objecting to discharge, under 11 U.S.C. § 727. Siewe answered the complaint, denied owing any money to Locci, and claimed that the IOU was forged.

In May 2016, over a year and a half into the adversary proceeding, Siewe moved the court either to abstain from exercising jurisdiction over the adversary proceeding, pursuant to 28 U.S.C. § 1334(c), or, in the alternative, to grant relief from the automatic stay. Animating both requests was his desire to seek relief from the October 2013 default judgment. He claimed that he was never properly

5

served with the complaint in that case. The bankruptcy court held a hearing on Siewe's motion in July 2016 and then denied the motion.

Trial on Locci's adversary complaint occurred over four days in February 2017 and one day in April 2017. Among other witnesses, Locci, Siewe, Pouassi, and Ngatcha all testified. The court also heard testimony from a forensic expert who had conducted a signature comparison and opined that the signature on the IOU was probably prepared by Siewe. Locci also offered various exhibits, including bank drafts and other documentary evidence, in support of her position.

After the trial, the parties filed briefs, and Siewe moved to reconsider the order denying his motion for relief from the stay. In that motion, Siewe argued that he would be denied due process if he could not challenge the default judgment and that he would suffer great injustice because the $500,000 Jay Peak investment was his main asset in the bankruptcy proceeding.

The bankruptcy court issued two orders on June 13, 2017. First, the bankruptcy court denied Siewe discharge under 11 U.S.C. § 727(a)(4). The court found by a preponderance of the evidence that Siewe signed and was bound by the IOU. Further, the court found that he lied when he declared multiple times under oath that he did not sign it.

Second, the bankruptcy court denied Siewe's motion to reconsider. The court found "no reason for the state court litigation to be revisited" because it

found that Siewe signed the IOU.  "Even if the default judgment were set aside for lack of service," the court explained, "this Court would retain jurisdiction and authority to finally determine the amount of Ms. Locci's claim in this case since she has filed a proof of claim and this Court has found the Debtor signed the [IOU].  *See* 28 U.S.C. § 157(b)(2)(B)."

Siewe appealed the bankruptcy court's rulings to the district court, which affirmed.  *See* 28 U.S.C. § 158(a)(1).  Siewe now appeals to this Court.  *See id.* § 158(d)(1).

### III.

As the second court of review in bankruptcy cases, we examine the judgment of the bankruptcy court independently of the district court.  *Senior Transeastern Lenders v. Official Comm. of Unsecured Creditors (In re TOUSA, Inc.)*, 680 F.3d 1298, 1310 (11th Cir. 2012).  We review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*.  *Id.*  "The factual findings of the bankruptcy court are not clearly erroneous unless, in the light of all the evidence, we are left with the definite and firm conviction that a mistake has been made."  *Id.* (quotation marks omitted).  A trial court's choice between two permissible views of the evidence cannot be clear error.  *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985).  The clear-error standard recognizes that "the trial judge is best able to assess the credibility and evidentiary

content of the testimony of the witnesses before [her]." *Hawley v. Cement Indus., Inc. (In re Hawley)*, 51 F.3d 246, 248 (11th Cir. 1995).

Whether a debtor knowingly and fraudulently made a false oath within the meaning of 11 U.S.C. § 727(a)(4)(A) is a question of fact which we review for clear error. *See Wines v. Wines (In re Wines)*, 997 F.2d 852, 856 (11th Cir. 1993) ("Whether the debtor had the requisite wrongful intent is a question of fact which we review for clear error."). The bankruptcy court's decision to grant or deny relief from the automatic stay is discretionary and "may be reversed only upon a showing of abuse of discretion." *Disciplinary Bd. v. Feingold (In re Feingold)*, 730 F.3d 1268, 1272 n.2 (11th Cir. 2013) (quotation marks omitted).

## IV.

A Chapter 7 debtor is not entitled to discharge if, among other things, "the debtor knowingly and fraudulently, in or in connection with the case[,] . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). The bankruptcy court in this case denied Siewe a discharge under this provision based on a finding that he lied under oath that he did not sign the IOU evidencing a debt to Locci.

Siewe does not directly challenge this determination. Instead, he argues that the bankruptcy court should have either abstained from hearing the adversary proceeding or granted Siewe relief from the automatic stay so that he could challenge the state court default judgment based on a lack of service. He claims

that the bankruptcy court's denial of his motion for abstention or relief from the stay violated his due process rights and constituted an abuse of discretion. In the course of arguing these issues, however, he asserts that the bankruptcy court's factual findings are clearly erroneous. We begin, therefore, by explaining that the bankruptcy court did not clearly err in determining that Siewe knowingly and fraudulently made false oaths.

## A. *Denial of Discharge*

The central factual issue at trial on Locci's adversary complaint was whether Siewe signed the IOU acknowledging a debt of €503,170 to Locci. The bankruptcy court found by a preponderance of the evidence that he did so. That factual finding was not clearly erroneous.

For starters, both Pouassi and Locci testified that they witnessed Siewe sign the IOU at a meeting involving Pouassi, Locci, Siewe, and Ngatcha. While Siewe denied signing the document and both Siewe and Ngatcha denied that any such meeting occurred, we must defer to the bankruptcy court, which was in the best position to judge the credibility of the witnesses who testified. *See In re Hawley*, 51 F.3d at 248. Although Siewe identifies a few purported inconsistencies in Pouassi's and Locci's testimony, we decline to second-guess the bankruptcy court's credibility determinations.

Additionally, as the bankruptcy court found, Pouassi and Locci's version of events was amply supported by other evidence in the record. First, a forensic expert who conducted a signature comparison opined that the signature on the IOU was probably prepared by Siewe. The expert explained that he could not state definitively that the signature was Siewe's, but that he was "very conservative" in his assessments and that the "probable" positive association was one step below a "definite association" on the scale he uses. This expert testimony was unrebutted. Thus, the record supports the bankruptcy court's finding that the expert credibly testified "with a high degree of certainty" that Siewe probably signed the IOU.

Second, Locci produced bank drafts and other documentary evidence supporting at least €300,000 in transfers from Locci to Siewe. Specifically, the bankruptcy court cited evidence of the following transfers: (a) 35 million lira (about €18,000) in November 1999; (b) €155,000 in June 2002; (c) €101,000 in August 2002; and (d) €30,000 in December 2003. Siewe also acknowledged receiving some money from Locci, though he denied owing more than $9,600.

And third, Locci presented a financial affidavit signed by Siewe in connection with Pouassi and Siewe's divorce proceeding. In that affidavit, Siewe acknowledged a joint debt with Pouassi to Locci in the amount of $600,000.

Taken together, this evidence—testimony from witnesses with personal knowledge, expert testimony that Siewe probably signed the IOU, documentary

10

evidence of prior transfers from Locci to Siewe, and Siewe's acknowledgement of a joint debt to Locci in the amount of $600,000—amply supports the bankruptcy court's finding that Siewe signed the IOU acknowledging a debt to Locci.  That Siewe presents alternative explanations for these events and identifies some countervailing evidence does not, on this record, leave us with a definite and firm conviction that a mistake has been committed.  *See In re TOUSA, Inc.*, 680 F.3d at 1310.  A trial court's choice between two permissible views of the evidence cannot be clear error.  *Anderson*, 470 U.S. at 574 (1985).  And the bankruptcy court's construction of the evidence in this case was reasonable.

For these reasons, we conclude that the bankruptcy court did not clearly err in finding that Siewe signed the IOU.  And because Siewe testified that he did not sign the IOU and that it was forged, the bankruptcy court likewise did not clearly err in determining that Siewe knowingly and fraudulently made false oaths in connection with the adversary proceeding.  *See In re Wines*, 997 F.2d at 856.

*B. Abstention*

Turning to the issues expressly raised on appeal, Siewe argues that the bankruptcy court abused its discretion and violated his due-process rights by refusing to abstain from the adversary proceeding so as to allow him to contest the default judgment in state court.

Under 28 U.S.C. § 1334(c), a bankruptcy court may, in its discretion, abstain from hearing a particular bankruptcy proceeding when doing so would be "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). "Any decision to abstain or not to abstain made under subsection [(c)(1)]," however, "is not reviewable by appeal or otherwise by the court of appeals." 28 U.S.C. § 1334(d).

This bar to appellate review does not apply to "a decision not to abstain in a proceeding described in subsection (c)(2)," which is the mandatory abstention provision. *See id.*; *see also Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 445 (2d Cir. 2005) ("Section 1334(d) contemplates appellate review of decisions refusing to exercise mandatory abstention."). But subsection (c)(2) is not at issue in this case. Siewe moved for permissive abstention under subsection (c)(1) only, and he does not argue on appeal that subsection (c)(2) applies.[1]

Accordingly, § 1334(d) prevents us from reviewing the bankruptcy court's discretionary decision not to abstain.

*C. Relief from the Automatic Stay*

---

[1] The basic difference between subsections (c)(1) and (c)(2) is whether the proceeding at issue is a core bankruptcy proceeding, 11 U.S.C. § 1334(c)(1) ("arising under title 11 or arising in or related to a case under title 11"), or not, *id.* § 1334(c)(2) ("based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11"). The bankruptcy and district courts found, and we agree, that the adversary proceeding in this case was a core bankruptcy proceeding, so subsection (c)(1) applies. *See Wortley v. Bakst*, 844 F.3d 1313, 1319 (11th Cir. 2017).

Finally, we address Siewe's contention that the district court should have granted relief from the automatic stay so as to allow him to challenge the default judgment in state court. In general, when a debtor files a bankruptcy petition, the enforcement of any prior judgment against the debtor is automatically stayed. *In re Feingold*, 730 F.3d at 1276; *see* 11 U.S.C. § 362(a). In addition to various statutory exceptions to the stay, the bankruptcy court may grant relief from the stay "for cause." 11 U.S.C. § 362(d)(1). "Cause" is not defined in the bankruptcy code, so courts consider a variety of case-specific factors under the totality of the circumstances. *See In re Feingold*, 730 F.3d at 1276–77. These factors may include the following: (1) "whether the debtor acted in bad faith"; (2) "the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code"; and (3) "pending state court proceedings." *Id.* at 1277 (quotation marks omitted).

Here, the bankruptcy court did not abuse its discretion in denying Siewe relief from the automatic stay. First, denying stay relief before the trial was consistent with the purpose of the automatic stay and did not prejudice Siewe. The purpose of the automatic stay is "to give debtors 'breathing room' after filing their petition." *B.F. Goodrich Emps. Fed. Credit Union v. Patterson (In re Patterson)*, 967 F.2d 505, 512 n.9 (11th Cir. 1992). After Locci obtained the default judgment, Siewe could have, but did not, attempt to challenge that judgment in state court

based on a lack of service. Instead, he voluntarily filed for bankruptcy, invoking and receiving the protection of the automatic stay. It was not until over a year into the adversary proceeding that he first notified the bankruptcy court that he wished to put the bankruptcy proceeding on hold and challenge the default judgment. In effect, Siewe belatedly asked for relief from the consequences of his own voluntary choice. As we see it, denying stay relief in these circumstances was consistent with the bankruptcy code and was not unfair to Siewe.[2] *See In re Feingold*, 730 F.3d at 1276–77; *In re Patterson*, 967 F.2d at 512 n.9.

Second, denying stay relief after the trial was reasonable because Siewe had a full and fair opportunity to litigate whether he signed the IOU. The adversary proceeding in this case, based on Locci's proof of claim and her objection to discharge, was a core proceeding. *See Wortley v. Bakst*, 844 F.3d 1313, 1319 (11th Cir. 2017) ("Core proceedings . . . are those that involve a right created by the federal bankruptcy law or that would arise only in bankruptcy, such as the filing of a proof of claim or an objection to the discharge of a particular debt." (quotation marks omitted) (alteration adopted)); *see* 11 U.S.C. § 157(b)(2) (core proceedings include "claims against the estate" and "objections to discharges"). The bankruptcy court therefore "ha[d] full and final adjudicatory authority" to decide

---

[2] Likewise, Siewe's claim that he was denied due process by being unable to challenge the default judgment on grounds of improper service is unavailing because that inability was the product of his own voluntary choice. Plus, he had a full and fair opportunity to litigate the issue of whether he signed the IOU.

the issues necessary to resolve Locci's adversary complaint, including whether Siewe signed the IOU.  *See Wortley*, 844 F.3d at 1319.  Thus, as the district court stated, the issue of "[w]hether Siewe is indebted to Locci under the IOU was fully tried on the merits before a court with full authority and jurisdiction."  And, significantly, the bankruptcy court decided that issue based on independent evidence—which, as we have explained above, supports the court's factual findings—and without reference to the validity or invalidity of the default judgment.  Because the validity of the default judgment did not factor into the bankruptcy court's analysis, and because the bankruptcy court had full authority to decide the issues that it did, the court reasonably determined that the state-court litigation did not need to be revisited.

Overall, we are unpersuaded by Siewe's claim that the bankruptcy court abused its discretion by exercising its authority to resolve issues in a core bankruptcy proceeding that arose from a bankruptcy petition he filed voluntarily.  Because the bankruptcy court's actions were consistent with the purpose of the automatic stay and were not unfair to him, we conclude that the court properly exercised its discretion to deny Siewe relief from the automatic stay.

## V.

For the reasons stated, the bankruptcy court's factual findings supporting its decision to deny Siewe a discharge under 11 U.S.C. § 727 are not clearly

erroneous, and the court did not abuse its discretion in denying Siewe relief from the automatic stay. We therefore AFFIRM the bankruptcy court on these issues. We lack jurisdiction to review the bankruptcy court's decision not to abstain, so we DISMISS this portion of the appeal.

**AFFIRMED IN PART; DISMISSED IN PART.**

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 08, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 17-15014-JJ
Case Style: Guy Siewe v. Maria Locci
District Court Docket No: 1:17-cv-02386-CAP
Secondary Case Number: 14-bkc-60345-WLH

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tiffany A. Tucker, JJ at (404)335-6193.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs